IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KEVIN FRITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-139-STE |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 10-19). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 10, 2020 through his date last insured of March 31, 2022. (TR. 12). At step two, the ALJ determined Mr. Fritz suffered from "severe" seizure disorder; spine disorder; hypertension; and a history of substance abuse. (TR. 12). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 13).

At step four, the ALJ concluded that Mr. Fritz retained the residual functional capacity (RFC) to:

> [P]erform medium work as defined in 20 CFR 404.1567(c) except he can never climb ladders, ropes, or scaffolds; he must avoid unprotected heights, unprotected moving mechanical parts, and other hazards such as open flame; the claimant must also avoid concentrated exposure to loud noise.

(TR. 15).

With this RFC, the ALJ concluded that Plaintiff was capable of performing his past relevant work as a meat packer. (TR. 17). However, the ALJ also presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 52-53). Given the limitations, the VE identified four jobs from the Dictionary of Occupational Titles. (TR. 53-54). Thus, at step

2

five, the ALJ adopted the VE's testimony and concluded that Mr. Fritz was not disabled based on his ability to perform the identified jobs. (TR. 18-19).[1]

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

---

[1] The ALJ's alternate step five finding is ambiguous. With the RFC limitations and skills obtained in Plaintiff's past work, the VE testified that Plaintiff could perform four jobs in the national economy. *See supra.* The ALJ acknowledged the testimony and then stated that she was making "the following alternative findings at step five[.]" (TR. 18). The ALJ then: (1) discussed the Medical-Vocational Guidelines (otherwise known as "The Grids"), (2) discussed the VE's testimony regarding the other jobs; and (3) stated that "a finding of 'not disabled' [wa]s appropriate under the framework of Medical-Vocational Rule 203.16." (TR. 18-19). The ALJ's seeming reliance on Grid Rule 203.16 was improper however, because "an ALJ may not rely conclusively on the grids unless [s]he finds . . . that the claimant can do the full range of work at some RFC level on a daily basis[.]" *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Here, the ALJ found that Mr. Fritz suffered from limitations which precluded a full range of medium work. *See* TR. 15. Thus, the Court presumes that the alternate step five finding was premised on a finding that Plaintiff could perform the jobs identified by the VE.

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUE PRESENTED

On appeal, Plaintiff alleges multiple errors involving the ALJ's consideration of Plaintiff's headaches. (ECF No. 12:5-13).

## V.   ERROR IN THE CONSIDERATION OF PLAINTIFF'S HEADACHES

Mr. Fritz alleges the ALJ erred in considering his headaches in three ways: (1) by failing to find that the headaches were a "severe" impairment at step two; (2) by failing to properly evaluate Plaintiff's subjective allegations involving the headaches; and (3) by failing to discuss the impact of the headaches at step four in determining the RFC. (ECF No. 12:5-13). Mr. Fritz' arguments have merit.

### A.   Subjective Complaints Regarding Plaintiff's Headaches

At the administrative hearing, Mr. Fritz testified that he suffered from headaches every day, which caused him "severe pain" "all day long." (TR. 48, 49). Plaintiff described having "good days" and "bad days" with his headaches and he testified that on a "bad day," his head "hurt[] severely" to the point that he had to lay down in a dark room and try to stay still until the pain ceased. (TR. 49). Plaintiff stated that "bad days" occurred 2-3 days per week. (TR. 49).  Indeed, the medical record confirms that Plaintiff made similar complaints to various medical professionals.

For example, a record dated April 14, 2021 states that Plaintiff had been complaining of "increased headaches" the past ten weeks which he described as bilateral temporal pain that was stabbing and throbbing and lasted all day. (TR. 303). On April 15, Plaintiff described a temporal headache having lasted for eleven weeks, with throbbing, sharp pain, tinnitus, weakness and sound and light sensitivity. (TR. 330, 334). On May 3, 2021, Mr. Fritz complained of a bilateral temporal headache, which he described as awakening him from sleep and occurring daily. (TR. 325). On May 22 and 28, 2021, Plaintiff reported a "constant headache for four months" which began in his temples and radiated to his neck and shoulders. (TR. 300, 320). At this time, Plaintiff's physician ordered an MRI of Mr. Fritz' brain to help discover a possible cause of the headaches. (TR. 305).

On January 23, 2022, Mr. Fritz complained that he had been suffering with a headache for three days. (TR. 315). On April 9, 2022, Mr. Fritz complained of having had a headache for 6 months, but not being able to afford treatment due to insurance problems. (TR. 437).

### B. Step Two

At step two, the ALJ determined that Plaintiff's headaches were "a non-severe impairment." (TR. 13). Mr. Fritz argues that "the evidence of [his] headaches is sufficient to satisfy the *de minimis* standard at step two." (ECF No. 12:7). Plaintiff's step two argument fails as a matter of law.

An impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). A claimant must make only a

*de minimis* showing to advance beyond step two. *Langley v. Barnhart,* 373 F.3d 1116, 1123 (10th Cir. 2004). To that end, a claimant need only establish, and an ALJ need only find, one severe impairment. *See Oldham v. Astrue,* 509 F.3d 1254, 1256–57 (10th Cir. 2007) (noting that, for step two, the ALJ explicitly found that the claimant "suffered from severe impairments," which "was all the ALJ was required to do"). As long as the ALJ finds one severe impairment, she may not deny benefits at step two but must proceed to the next step. Thus, the ALJ's failure to find Plaintiff's headaches severe at step two is not reversible error because the ALJ found that Mr. Fritz suffered from four severe impairments. *See Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016; *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

    **C.**    **The ALJ's Consideration of Plaintiff's Subjective Allegations**

Mr. Fritz argues that the ALJ "failed to address [his] subjective reports [of headaches] or give any specific reasons for discounting his headache-related symptoms." (ECF No. 12:11). The Court agrees.

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.,* at *2.

Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and
- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

Here, Plaintiff testified extensively regarding his headaches, describing them as occurring daily, with approximately two-three days per week resulting in severe, constant

7

pain which causes him to have to go in a dark room and lie down in an effort to "stay still until it calms down," for at least an hour. (TR. 49).

In formulating the RFC, the ALJ stated that she had considered Plaintiff's symptoms and the consistency of his subjective allegations with other evidence of record. (TR. 15). The ALJ then: (1) set forth the two-step framework under SSR 16-3p and (2) summarized Plaintiff's reports of seizures, back pain, and anxiety. (TR. 15). Ultimately, the ALJ found:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 15). In doing so, the ALJ:

- thoroughly discussed why she had discounted Plaintiff's subjective allegations regarding his seizures, back pain, hypertension, and mental impairments;

- provided citations to the record in support of his analysis; and

- considered the factors set forth in SSR 16-3p.

(TR. 16). But the problem with the ALJ's discussion is that it is devoid of any discussion relating to Plaintiff's headaches. Simply put, the ALJ: (1) failed to mention Plaintiff's testimony regarding his headaches and (2) failed to explain why she apparently disbelieved said testimony.

At step two, in finding the headaches to be "non-severe," the ALJ relied on:

- Plaintiff's testimony that "he ha[d] been able to work providing in-home health services to his son despite his intermittent headaches" and

8

- The fact that Mr. Fritz "experienced notable relief from his headaches with Toradol and/or muscle relaxers."

(TR. 13). Neither of these rationales is sufficient to have discharged the ALJ's duty to evaluate Plaintiff's subjective complaints in accordance with SSR 16-3p.

The first rationale is insufficient for two reasons. First, the rationale was offered as a basis on which to reject the headaches as a "severe impairment" at step two, a finding which was to have been based on "medical factors alone[.]" *Langley v. Barnhart*, 373 F.3d 1116, 1123; *see also* Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms In Disability Claims, 2017 WL 5180304, at *12 (Oct. 25, 2017) (noting that an individual's symptoms must be considered when determining the individual's residual functional capacity at step four of the sequential evaluation). The second rationale is also insufficient for three reasons. First, the rationale was relied on at step two, which was to be based solely on medical factors. *See supra*. Second, Mr. Fritz testified that on "bad days," the headache pain was so severe that he had to lie down in a dark room for at least an hour, but that sometimes even doing that, the pain persisted. (TR. 48-49). On these days, Plaintiff was obviously not caring for his son full-time, but was instead trying to lessen his headache pain through isolation. Thus, the Court finds this rationale lacking in substantial evidence, even if the ALJ had relied on such reasoning in evaluating Plaintiff's subjective complaints. *See Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017) (finding reversible error when the ALJ "downplayed the severity of some evidence to support his adverse credibility finding, without considering other probative evidence that tend[ed] to support [the claimant's] allegations of pain and limited functioning.").

9

Finally, the ALJ mischaracterized the evidence in relation to Plaintiff's attempt at pain relief. In support of her finding that the headaches were not severe, the ALJ cited a record which purported to show that Plaintiff "experienced notable relief from his headaches with Toradol and/or muscle relaxers." (TR. 13). In actuality, however, the record that the ALJ cited stated that Plaintiff was experiencing a headache located at his bilateral temples, radiating to his neck and shoulders and that "in the past" Plaintiff had reported having relief with Toradol and muscle relaxers. (TR. 320). The medical evidence did show during the period of disability, Plaintiff received a Toradol shot and had tolerated it well, but beyond that notation, the record is devoid of any finding regarding whether the medication had been effective in treating Plaintiff's headaches. *See* TR. 318, 323, 328.

In sum, the Court finds that the ALJ failed to adequately consider Plaintiff's subjective allegations regarding his headaches and the error warrants remand.

### D. Step Four

Mr. Fritz argues that despite the fact that the ALJ deemed the headaches as "non-severe" at step two, she still erred in her duty to consider their effect on Plaintiff's RFC at step four. (ECF No. 12:6-13). The Court agrees.

The rationale behind the application of harmlessness at step two is "because *all* medically determinable impairments, severe or not, must be taken into account at those later steps [of the sequential evaluation]." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010); *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013)

("[I]n assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe.*").

At step two, after deeming the headaches as "non-severe," the ALJ stated that "any limitations caused by the non-severe impairment are incorporated in the residual functional capacity set forth below." (TR. 13). In this Circuit, the practice is to take the ALJ "at [her] word." *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007). However, the record contains evidence regarding Plaintiff's headache symptoms involving photophobia, phonophobia, disturbed sleep, weakness, and tinnitus—symptoms which Plaintiff's physician deemed severe enough to warrant a brain MRI. *See supra*. Arguably, the RFC accounted for the phonophobia, as it stated that Plaintiff must avoid "concentrated exposure to loud noise." (TR. 15). But Plaintiff's headaches caused a number of other symptoms, acknowledged by medical professionals, which the ALJ simply failed to discuss. In light of Plaintiff's testimony regarding his headaches, the Court deems this evidence "significantly probative," and finds the ALJ's failure to discuss the same, in connection with the RFC, erroneous. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Deardorff v. Comm'r, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) ("The ALJ erred by failing to discuss the significant evidence of [the plaintiff's] headaches and how they might impact his functional abilities . . . . We therefore remand for the ALJ to consider the evidence of [the plaintiff's] headaches[.]").

### E.    Summary

Mr. Fritz testified regarding the severity of his headaches and how they affected his daily life. Plaintiff made similar reports to medical professionals who diagnosed Plaintiff with migraine headaches and frequent headaches, severe enough to warrant an MRI of Plaintiff's brain. Even so, the ALJ failed to properly discuss either Plaintiff's subjective complaints or the supporting medical evidence regarding Mr. Fritz' headaches—both of which shall be re-evaluated on remand in accordance with the findings above.

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on August 31, 2023.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE